BALTIMORE LIFE INSURANCE COMPANY, a corporation of the State of Maryland, defendant below, plaintiff in error, *vs.* WILLIAM FLOYD, plaintiff below, defendant in error.

1. INSURANCE—"WARRANTY" AS DISTINGUISHED FROM "REPRESENTA-
   TION".
   A "warranty" is an agreement constituting a part of the contract when completed, and which, whether material or not, must be strictly complied with, as distinguished from a "representation", which is a statement inciden- tal or collateral to the contract and a part of the proceedings that propose the contract, and which, though false, does not avoid the contract, unless actually material or clearly intended to be made material by the parties.

2. INSURANCE—CONSTRUCTION—WARRANTY OR REPRESENTATION—INTEN-
   TION OF THE PARTIES.
   Whether any particular false statement by the insured in his applica- tion shall avoid the policy, of which it is made a part, depends upon the intention of the parties respecting such statement.

3. INSURANCE—CONSTRUCTION OF POLICY—WARRANTY OR REPRESENTA-
   TION—INTENTION OF PARTIES—BENEFICIARY.
   The application, signed by the insured, provided that he declared his representations and answers strictly correct and true in every particular, and agreed that they should become part of any policy issued, and that any untrue answers would avoid the policy, and therein the insured stated that the beneficiary was his uncle, and the policy declared that it was issued upon the condition that the agreements therein were accepted by the assured as a part of the contract, to be construed as if they were recited at length in the policy, and that each agreement was a condition precedent to the con- tract, and that if, within two years, the falsity of any statement made in the application should be discovered, and notice thereof be given to the insured, the policy should be avoided, and the company should return the premiums, and further declared that the insured at any time might change the benefi- ciary by designating him upon the company's blank and having the name of the substituted beneficiary entered on its books. *Held*, that it was not intended by the company that the statement as to the relationship of the beneficiary should constitute a warranty or condition precedent to liability on the pol- icy, since the provision for a change of beneficiary showed that it was not regarded as material or important or in any wise material to the risk.

4. INSURANCE—CONSTRUCTION—EXPRESS WARRANTY.

An express warranty, in the absence of legislative enactment, must be strictly complied with.

5. INSURANCE—AVOIDANCE OF POLICY—WARRANTIES INCORPORATED FROM APPLICATION—INTENT.

A condition or agreement in the policy making all the answers and statements in the application warranties, conditions precedent, or representations material to the risk, does not show that the parties intended that an absolutely immaterial and unimportant statement should be so considered, but, to make an immaterial statement in the application either a warranty or a representation material to the risk, it must clearly appear that such was the intention of the parties; and hence a statement in the application as to the relationship of the beneficiary to the insured, immaterial to the risk, and not expressly or specifically mentioned in the policy, and made a condition precedent to its performance, which the insurer, within the two years allowed by the policy, discovered to be false, did not avoid the policy.

6. INSURANCE—CONSTRUCTION IN FAVOR OF THE INSURED.

Whenever legally possible, a construction favorable to the insured should be given.

(*June* 15, 1915.)

CURTIS, Chancellor, PENNEWILL, C. J., and BOYCE and CONRAD, J. J., sitting.

*Andrew C. Gray* (of *Ward, Gray and Neary*) for plaintiff in error.

*Lilburne Chandler* for defendant in error.

Supreme Court, June Term, 1915.

ERROR (No. 6, January Term, 1915) to Superior Court for New Castle County. Case below (No. 6, January Term, 1914), *ante* 201, 91 *Atl.* 653.

Action by William Floyd to recover from the Baltimore Life Insurance Company, upon a certificate or policy of insurance issued by it to Albert Hamlin on June 3, 1912, by which in consideration of the payment of certain weekly dues as the same became due and payable, it agreed that the sum of two hundred and forty-four dollars, contingent upon the death of the said Hamlin, should be paid to William Floyd, the defendant in error and plaintiff below, subject to the agreements and conditions printed on the back of the policy. Floyd the plaintiff below had a verdict and a writ of error was taken by the defendant company. Judgment affirmed.

In the application which was duly signed by the insured appears the following statement printed at the head of the paper and immediately preceding the questions and answers:

"The undersigned doth hereby declare, that the representations and answers made below, and in the examination on the other side, are strictly correct and true in every particular, and doth now agree that they shall form the basis, and become part and parcel of the policy should one be issued; and also that any untrue answers will render this policy null and void."

Following said statement are these words:

"Each and every answer must be true.
                                    "[Signed] Albert Hamlin.
"Or the policy will be void.
"Not to be made until every answer to the questions below is recorded and found correct by the applicant."

In the application is the following question and answer:

"Name and relationship to whom insurance is to be paid, William Floyd; relationship, uncle."

In the policy appears the following language:

"The company promises, subject to the conditions hereinafter set forth, to pay to the person designated as the beneficiary  *  *  *  the sum of money stipulated in the said schedule."

"This policy is issued and accepted upon the condition that the 'Conditions and Agreements' printed or written by the company upon the back of this policy, are accepted by the assured as a part of this contract, and to all intents shall be construed as if they were above recited at length upon the face hereof."

The policy also provides as follows:

"Conditions and agreements upon which this contract is made, as referred to in the within policy, each of which is hereby acknowledged a condition precedent to said contract."

Then follow thirteen conditions and agreements, No. 6 of which reads in part as follows:

"If within two years from the date hereof, whether the insured die or not, the falsity of any statement made by the insured in the application herefor be discovered by the company and notice thereof be given to the insured or the beneficiary, this policy shall be void, and the company shall pay to the insured, if living, or to the beneficiary, if the insured be dead, all premiums paid upon this policy; and upon such payment, or tender, the company shall be relieved of all further liability hereunder."

The assignments of error are as follows:

"First: The court below erred in refusing to allow the following question to be answered in the examination of Lewis Speakman: 'Q. Has the Baltimore Life Insurance Company, the defendant in this case, any rule about the issuing of policies on the lives of uncles or cousins?'

"Second: That the court below erred in refusing to instruct the jury to find a verdict for the defendant below, plaintiff in error.

"Third: That the court below erred in instructing the jury, as follows:

" 'The first question is, whether the contract of insurance between the insured and the insurer is vitiated by an alleged misrepresentation by the insured in his application for insurance as to the relationship of the beneficiary to himself. We are of the opinion, and charge you, that if such a misrepresentation was made, it was not such a misrepresentation or misstatement of facts that was material to the risk, and therefore does not void the contract. For this reason, we refuse the prayer of the defendant to give you binding instructions to return a verdict in its favor.'

"Fourth: That the court below erred in instructing the jury as follows:

" 'If you find that the contract of insurance sued upon was procured and entered into by Hamlin, the insured, and the premiums were paid by Hamlin, the insured; either personally or through his agent, and the circumstances otherwise indicate a *bona fide* nonspeculative transaction, the contract cannot then be held a gambling contract, and your verdict should be for the plaintiff for the amount of his claim and interest, whether the plaintiff, as beneficiary, had or had not an insurable interest in the life insured for him.' "

·Pennewill, C. J., after stating the facts as above, delivered the opinion of the court:

The plaintiff in error on June 3, 1912, issued to one Albert Hamlin, a certain certificate or policy of insurance, by which, in consideration of the payment of certain weekly dues as the same became due and payable, it agreed that the sum of two hundred and forty-four dollars, contingent upon the death of the said Hamlin, should be paid to William Floyd, the defendant in error and plaintiff below, subject to the agreements and conditions printed on the back of the policy.

William Floyd, the beneficiary named in the policy recovered judgment below in an action brought upon the policy, and a writ of error was taken by the defendant company.

It is conceded by counsel for appellant:

"That the weight of authority in this country supports the rule, that where there is no moral fraud, a mere representation in the application, though false, does not avoid the policy, unless such representation be intrinsically material."

But counsel contends:

"It is equally well settled, that, independent of legislation, where it is stipulated in the policy that any misrepresentations will render the policy void, such statements, though not intrinsically material to the risk, are made so by express agreement of the parties; in other words, the question of materiality in such cases is irrelevant."

[1]   It is not clear from his brief whether appellant's counsel regards the statement in question as a warranty, or a representation not intrinsically material but made material by agreement of the parties.   It is difficult in this case, as it has been in many others, to tell whether the statement in controversy is the one or the other.   According to all the authorities a warranty is an agreement constituting a part of the contract, while a representation is a statement incidental or collateral thereto.   To state the distinction in a somewhat different way:   A representation differs from a warranty, and from a condition expressed in the policy, in that the former is a part of the proceedings that propose the contract, and the latter is a part of the contract when completed.

There is probably no better or clearer definition of a warranty, and the distinction between a warranty and a representation to be found, than that given in the case of *Ala. Gold Life Ins. Co. v. Johnston*, 80 *Ala.* 467, 2 *South.* 125, 59 *Am. Rep.* 816:

A warranty is a part of the contract, and whether material or not must be strictly complied with, while a representation is collateral or preliminary to the contract and though false does not avoid the contract unless actually material, or clearly intended to be made material by the parties.

The appellant contends that the statement of the insured respecting the relationship of his beneficiary, is either a warranty, or a representation made material by the agreement of the parties that the truthfulness of all answers in the application should be a condition precedent to the fulfillment of the contract.

The conditions and agreements printed on the back of the policy are expressly made a part of the contract, and one of those conditions is that, if within two years the falsity of any statement made by the insured in the application be discovered by the company, the policy should be void.

It would seem, therefore, that all the statements made in the

application might be regarded as warranties unless it appears that such was not the intention of the parties. According to the undisputed testimony the untruthfulness of the statement in relation to the beneficiaries' relationship was discovered by the company within two years, and therefore the policy would be void unless it appears from the policy or the negotiations leading up to the contract that the particular statement in question was not regarded by the parties as a warranty. And if the statements made by the insured in his application were not warranties, but representations, the statement in question which was intrinsically immaterial, was not made material by any general agreement or condition indorsed on the policy if it appears that it was not their intention that it should be regarded as material.

[2]   However confusing may be the text-books and the decisions respecting warranties and representations in insurance policies, there is one principle of law that applies to those as well as all other contracts, and that is: The intention of the parties, when ascertained, must control. So that, whether any particular statement by the insured in his application shall, if false, avoid the policy, depends upon the intention of the parties respecting that statement.

[3, 4]   Notwithstanding the answers and representations which appear in the application, and the agreement or condition No. 6, which appears on the back of the policy and is made a part of the contract, the court are of the opinion it was not intended by the company that the particular statement in question should constitute a warranty or condition precedent to the fulfillment of the contract.

Whether a false statement respecting a matter in nowise material to the risk, and by reference made a part of the contract, is or is not a warranty or condition precedent depends in every case upon the intention of the parties. To make such a statement a condition precedent to the performance of the agreement it must clearly appear that it was so intended. This proposition is sustained by all the authorities, and is entirely consistent with justice and reason.

We may further say: If it appears from the policy that a

particular representation in the application was not regarded by the company as material or important, it will not avoid the policy if found to be false, even though there be a general statement, condition or agreement in the application or on the back of the policy and made a part of the contract, the purpose of which is apparently to make *all answers* conditions precedent whether intrinsically material or not.

The opinion of the court that the company did not intend that a false statement made in good faith by the insured respecting the relationship of the beneficiary, should avoid the policy is based in part upon condition or agreement number nine written on the back of the policy, and also made a part of the contract, which reads as follows:

"The insured may at any time change the beneficiary hereunder by designating the substituted beneficiary upon the company's blank for change of beneficiary, and filing the same at the company's home office, and having the name of the substituted beneficiary entered as such upon the books of the company."

This is a clear and positive agreement on the part of the company without condition or qualification that the insured may *at any time* change his beneficiary. In view of such agreement it could make no difference to the company whether the beneficiary was an uncle to the insured or not. Manifestly, then, the question and answer went to the description or identity of the beneficiary and not to the validity of the policy, and it would be illogical to say that a false statement respecting such relationship was intended to avoid the contract. *Lampkin v. Travelers' Ins. Co.*, 11 *Colo. App.* 249, 52 *Pac.* 1040; *Vivar v. Knights of Pythias*, 52 *N. J. Law* 467, 20 *Atl.* 36; *Standard Life Ins. Co. v. Martin*, 133 *Ind.* 381, 33 *N. E.* 105; *Van Cleave v. Union Casualty Co.*, 82 *Mo. App.* 668; *James v. Supreme Counsel R. A. (C. C.)* 130 *Fed.* 1014; *Goff v. Supreme Lodge*, 90 *Neb.* 578, 134 *N. W.* 239, 37 *L. R. A.* 1191; *Minn. Mutual Life Ins. Co. v. Link*, 230 *Ill.* 273, 82 *N. E.* 637.

There were many answers made by the insured in his application, some of which were material and others not. There was not one more harmless, unimportant and immaterial to the risk,

than the one in question, and we think the court would not be warranted in holding that such a false statement avoided the policy when it clearly appears that the company could not have regarded the relationship of the beneficiary to the insured of any consequence at all so far as the validity of the policy was concerned.

"Any statement or stipulation upon the literal truth or fulfillment of which, in the intention of the parties, the validity of the contract is made to depend, whether appearing as a condition or warranted, or howsoever otherwise, amounts to a warranty."

Such is the law as stated by May in his work on Insurance, and other text-writers, as well as judicial decisions are in substantial concurrence.

Warranties are not favored and the courts have quite uniformly held in the more recent decisions, that an immaterial statement or stipulation will not be held to be a warranty unless it is clearly the intention of the parties that it should be. The courts will hold a stipulation, whether contained in the policy or the application, to be a representation rather than a warranty when there is room for doubt.

"Warranties can only exist upon the fair interpretation and clear intendment of the words of the parties, and since courts will not favor warranties by construction, they will not be bound when, from the form of expression used, or other reason, there appears to be no intention to enter into them. Parties will not be held to have entered into the contract of warranty unless they clearly intended it. In some cases it has been held that though the application was by reference made a part of the policy, yet as the statements in the application were referred to as representations, and so denominated in that clause of the policy which referred to them, they were to be treated as such, and to be regarded rather as having the legal effect of representations than of warranties. * * * And when it is said that the statements in an application referred to as forming a part of the policy are by that reference imported into the policy and become warranties, and like warranties, must be exactly complied with, it is apparent from the cases just cited, and from many others, that the language of the courts in their assertion of the rule is somewhat more positive and vigorous than is justified by the manner in which the rule has been illustrated by practical application. In truth the courts have apparently begun to see that they have gone far enough, under the lead of arbitrary rules, in finding constructive warranties in the immaterial, unguarded and oftentimes superfluous statements contained in the application."

"Although the application be expressly made a part of the policy, its statements will not be regarded as warranties, if qualified by other stipulations in either which afford a fair inference that the parties themselves did not so intend them."

28 Del.]  BALTIMORE LIFE INSURANCE CO. vs. FLOYD.  439

Opinion.

"There are even authorities to the effect that in dealing with warranties common sense is not to be lost sight of, and that the fair practical intent of the parties is to be sought and that substantial fulfillment of a warranty is enough."

We have given the foregoing extracts from May's treatment of the law of warranties for the purpose of showing how far the courts have gone in some cases in declaring an immaterial representation not to be a warranty even though it is made apparently a part of the contract. In order to hold that such a representation in the application is not a warranty they will seize upon any representation, condition or language in the application, or the policy, which reasonably and fairly indicates that it was not the intention of the parties that it should be a warranty or condition precedent to the fulfillment of the contract.

In commenting on the English case of *Pawson v. Watson*, 2 *Cowp.* 790, and reported also in *Volume* 13, *English Ruling Cases*, the learned editor, in his notes agrees, that a warranty is binding whether it is made in fraud, mistake, or negligence, or is immaterial, but he says:

"It may perhaps be permitted to the editor to observe that in his opinion, the doctrine that a warranty is binding although upon a matter that is absolutely immaterial and trivial, * * * is a monstrous absurdity, and in good public policy ought not to be tolerated."

In *Germania Ins. Co. v. Rudwig*, 80 *Ky.* 223, the court said:

"It is * * * subversive of the" true intent of the "contract to avoid it because of any trivial misrepresentation not material to either party."

Such is the trend of modern decisions. While they do not dispute or disregard the well settled law, that an express warranty, in the absence of legislative enactment, must be strictly complied with, they will not hold an immaterial representation in an application to be a warranty, even if it is, by reference, made a part of the contract and called a warranty, if there is anything in the proposal or the agreement which fairly indicates that the parties did not so regard it.

It is upon such reasoning the court base their decision in the present case.

Condition or agreement No. 6, printed on the back of the pol-

icy, and made a part of the contract, is based upon the falsity of
*any statement* made in the application.   The reference is to a
"statement" and not to a "warranty", and a reference' of this
character has been held sufficient to justify the court in declaring
the statement to be representation merely, such manifestly being
the intention of the parties.

But we base our decision on broader grounds and upon a
clearer intention of the parties, viz.:

1.   The agreement of the company, made a part of the con-
tract, that the insured might change his beneficiary at any time.

[5, 6]   2.  Upon the ground, that a condition or agreement
in the policy making all the answers and statements in the appli-
cation, by a general reference, warranties, conditions precedent,
or representations material to the risk, does not show that the
parties intended that an absolutely immaterial and unimportant
statement should be so considered.   2 *Cooley's Briefs on the Law
of Insurance*, 1136.

A warranty is in the nature of a condition precedent, and, as
such must form a part of the contract.   The policy is the contract,
and if outside papers are to be imported into it this must be done
in so clear a manner as to leave no doubt of the intention of the
parties.   If not clear the benefit of the doubt is given to the
assured.   *Goddard v. Insurance Co.*, 67 *Tex.* 69, 1 *S. W.* 906, 60
*Am. Rep.* 1.

When the policy contains a clause declaring that the applica-
cation forms a part of the policy, it thereby becomes a part of the
contract, and all the *material* statements in the answers of the
applicant are thereby changed from representations into warran-
ties.   When the representations are *expressly referred to* they will
acquire the character of warranties.   If statements are *expressly
referred to* in the policy as representations, such a reference will
make them *prima facie*, if not conclusive, evidence of their materi-
ality.   *Eddy Street Iron Foundry v. Ins. Co.*, 8 *Fed. Cas.* 300.

In order to make an immaterial statement in the application,
either a warranty or a representation material to the risk, it must
clearly appear that such was the intention of the parties.   A gen-

eral reference to the entire application will not, in all cases, have such effect.

It is inconceivable, and shocking to the common sense of the court, that a general, blanket reference of that character should have such effect, or that it could have been so intended.

An immaterial representation, though false, will not avoid the contract if it appears only in the proposal or application for the insurance and is not *expressly* made a condition or part of the agreement as shown by the policy. It is not enough that the policy provides that all representations made on the application form shall be considered a part of the contract just as though they were written therein. The representations relied on, if immaterial, must be specifically mentioned and made a condition precedent to the performance of the contract. This is in effect the same as saying that a representation which does not affect the risk will not avoid the contract of insurance unless it clearly appears from the contract that the *parties intended it should have that effect.* Whenever legally possible a construction favorable to the insured will be given.

In the leading case of *Imperial F. Ins. Co. v. County*, 151 *U. S.* 452, 14 *Sup. Ct.* 379, 38 *L. Ed.* 231, particularly relied on by the appellant, the condition, the noncompliance with which avoided the contract, was expressly and specifically set forth in the policy or contract. It was not one of a number of representations that appeared in the application for the insurance, some of which were material to the risk and others not. There could be no doubt the parties meant that the continuance of the policy should depend upon each of the several conditions *specifically enumerated therein*, of which the condition in question was one. There can be no question that such was the mind of both the insurer and the insured. They chose to make an immaterial and unimportant matter a condition precedent to the performance of the agreement; and such matter not being unlawful the court held they had no right to disregard it and thereby make another and different contract.

But an entirely different question is presented when a number of representations appear in the application or on the back of the

policy, some of which are material to the risk and others not. When the policy, merely by general reference, provides that the "conditions and agreements" that appear on the back of the policy are accepted as a part of the contract, the reasonable inference is that only those representations are meant which are material to the risk. Such a construction does not change the *clear and express terms of the agreement* made by the parties, neither does it deprive the insurer of any right which he is in justice and good conscience entitled to.

The case in 151 *U. S.* above mentioned is entirely consistent with this construction because the condition there in question was clearly expressed in the policy. It was made an express condition of the contract. The court said, "The parties have made certain terms conditions on which their contract shall continue or terminate"; and referred to the condition as being a "separate and valid stipulation of the parties."

In the present case the representation as to relationship was not specifically mentioned in the policy. There are a number of conditions specifically stated upon which the continuance of the policy was made to depend, but the representation respecting the relationship of the beneficiary to the insured was not one of them.

The doctrine we have approved does not deprive parties of any contractual rights, or of the power to make such lawful contracts as they see fit to make, but it is based upon the proposition that where there are a large number of representations in an application for insurance, some of which are important and material and some are not, it was not the *intention of the parties* that one of those representations which clearly does not affect the risk should avoid the policy.

We admit that some of the authorities are apparently not in harmony with the views above expressed; and we concede that it is impossible to reconcile satisfactorily the reasoning of the courts in all the cases. In the effort, on the one hand to maintain the right of contract, and on the other to protect the interests of the insured, the courts have interpreted differently the intention of contracting parties when the essential provisions of the contract were the same.

In the case of *Doll v. Equitable Life Assurance Society*, 138 *Fed.* 705, 71 *C. C. A.* 121, cited by the appellant, much stress was laid on the fact that the answers were "*warranted*" to be true, and upon that the decision was largely based.

In the case now before the court the statement in question had no reference to disease or family history, as in the *Doll case*, but simply to the relationship of the beneficiary to the insured; and the word "warranted" is not used either in the application or the policy. The false statement could not possibly affect the risk in any way, and it is not contended that it was made in bad faith.

We have made sufficient reference to two of the six cases cited by the defendant, and shall comment very briefly on the others, and mainly for the purpose of showing that they are not analogous to the present case.

In *McClain v. Provident*, 110 *Fed.* 80, 49 *C. C. A.* 31, the insured said in his application:

"And I hereby warrant said answers as written to be true."

The court based their decision on the word "warrant", saying:

"A warranty is an agreement; an answer is a statement. The concluding sentence (above quoted) is an unqualified agreement, and to my mind is decisive."

In *Carrollton Furniture Co. v. American Credit Co.*, 124 *Fed.* 25, 59 *C. C. A.* 545, the court said:

"In the present policy the application, by its terms, was 'made part of this contract of indemnity'; and the application, in terms, warranted the answers to be true, and offered them as a consideration of the policy to be issued."

The syllabus of *Farrell v. Security Mutual Ins. Co.*, 125 *Fed.* 684, 60 *C. C. A.* 374, is in part as follows:

"Where an application for life insurance stipulated that the answers to the questions in the application should be warranties, and that, if the answers were untrue in any respect, the policy should be void, the insured warranted the literal truth of his answers, and a false statement purporting to be a complete answer to a question authorized the forfeiture of a policy issued on the faith thereof."

*Standard Life & Accident v. Sale*, 121 *Fed.* 664, 57 *C. C. A.* 418, 61 *L. R. A.* 337, is a Tennessee case, in which state there was a statute applicable to insurance contracts. The court said:

"But it is clear that it (statute) does not change or affect the general law of insurance applicable to the facts in this case, for it is not disputed that the matter which was the subject of the warranty increased the risk of loss, if the statement was not true."

In view of the reasoning and opinion of the court upon the third assignment of error, as above expressed, it does not seem necessary to deal specifically, with the first and second assignments, which are also based on the alleged warranty, or materiality, of the deceased's statement respecting the relationship of his beneficiary.

It was upon the third assignment that the appellant chiefly relied, at the argument.

The fourth assignment attacks the validity of the contract on the ground that the beneficiary had no insurable interest in the life of the insured.

The court below considered this question very fully, and there can be no doubt about the correctness of their conclusion.

We find no error in the record, and the judgment of the court below is affirmed.